NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY R. SCHMITS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 08-CV-1971 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon Plaintiff Henry R. Schmits's ("Plaintiff") appeal from the Commissioner of Social Security's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under the Social Security Act ("the Act") for the period commencing October 21, 2000. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. <u>See</u> Fed. R. Civ. P. 78. Because the Commissioner properly analyzed Plaintiff's claim, and because the Commissioner's decision is supported by substantial evidence, the Commissioner's decision is affirmed.

**I.   BACKGROUND**

    A.   *Procedural Background*

Plaintiff was born on September 13, 1954, and was forty-eight years old at the time of his

hearing before Administrative Law Judge ("ALJ") Katherine C. Edgell. Plaintiff last worked in 2000. Prior to that time, Plaintiff worked in a series of "heavy" jobs, including as a construction laborer, mechanic, grounds worker, assembler of electronic equipment and repairman.

Plaintiff first applied for social security benefits on December 28, 2000, alleging disability due to back problems, a right knee impairment, a right elbow impairment, vision impairment in his right eye, inner ear damage, balance problems and mental impairments. After a hearing before the ALJ on May 1, 2003, Plaintiff's claim was denied on June 27, 2003. The Appeals Council then denied Plaintiff's request for review on March 12, 2004.

Plaintiff appealed to this Court and, on January 5, 2005, the parties stipulated to remand the case to the Commissioner. On August 15, 2005, the Appeals Council remanded the case to the ALJ for a new hearing with instructions to: (1) list Plaintiff's severe impairments at Step Two; (2) list and discuss the Listing Level impairments considered; (3) consider Plaintiff's mental impairments and "the effect of resulting limitations on the occupational base;" (4) re-evaluate whether Plaintiff had any non-exertional limitations, and if necessary, obtain Vocational Expert ("VE") testimony at Step Five; and (5) re-evaluate whether Plaintiff's individual and combined impairments meet or equal any of the Listings. A supplemental hearing was held before the ALJ on December 14, 2005, and testimony was taken from Plaintiff, a witness, and a VE. The ALJ again denied Plaintiff's application on March 31, 2006. On February 26, 2008, the Appeals Council declined to accept jurisdiction.

B.    *Factual Background*

i.    Medical Evaluations

The ALJ examined several medical reports submitted by hospitals and physicians who treated or examined Plaintiff, including from: Robert M. Barzini, M.D. (the "Barzini Report"), Eugene Papowitz, M.D. (the "Papowitz Report"), Harvey S. Sicherman, M.D. (the "Sicherman Report"), Manavattira B. Thimmaiah, M.D. (the "Thimmaiah Report"), Clara Castillo-Velez, M.D. (the "Castillo Report"), Joan Trachtenberg, M.D. (the "Trachtenberg Report"), Thomas Obrotka, M.D. (the "Obrotka Report"), and G. Spitz, D.O. (the "Spitz Report").

1.    Barzini Report

Dr. Barzini, an Orthopedic Hand Specialist, concluded that Plaintiff had an inability to make a claw hand and had reached maximum medical improvement. Dr. Barzini recommended home exercise and dynamic splinting, while stating that no surgical intervention was available.

2.    Papowitz Report

Dr. Papowitz was Plaintiff's treating psychiatrist from March 12, 1995 until February 9, 2006. The Papowitz Report included treatment notes indicating that Plaintiff had a history of social phobia impairing his ability to work and maintain personal relationships. Dr. Papowitz's treatment of Plaintiff during this time period was limited to medication management. Dr. Papowitz treated Plaintiff with Klonopin exclusively until July 19, 2002, at which time he determined that Plaintiff's condition had deteriorated and accordingly added Valium to his medications and advised Plaintiff to seek mental health treatment and further anti-depressive medication. Dr. Papowitz also indicated that from May 2000 to the present, Plaintiff's

3

impairments met Listing 12.06A1, A2, and A5 and 12.06B with "extreme" limitations at B1, B2, and B3 and continual-repeated episodes of decompensation, each of extended duration and resulting in the complete inability to function outside of Plaintiff's home. Dr. Papowitz recommended a publically funded mental health clinic for more regular treatment of Plaintiff's depression and anxiety.

### 3. Sicherman Report

The Sicherman Report consisted of the treatment notes of Dr. Sicherman, a Sports Medicine and Rehabilitation specialist who treated Plaintiff with physical therapy from October 21, 2000 until March 8, 2001. Dr. Sicherman's notes indicate that Plaintiff had a history of lumbar spine surgery, including for herniated disc, and that Plaintiff had a herniated disc at the L5-S1 level with pain radiating down the right leg. Plaintiff was diagnosed with acute lumbosacral strain, right radiculitis, sciatica, and contusion of the right knee. On November 30, 2000, an MRI on Plaintiff's LS spine revealed fibrosis and L5-S1 disc herniation. On December 11, 2000, Plaintiff was found to have positive leg raising on the right and diminished sensation in the right L5 distribution. Plaintiff was sent for physical therapy and continued medication.

Dr. Sicherman concluded that, as a result of a car accident in October 2000, Plaintiff sustained a new herniated L5-S1 disc, contusion and post-traumatic chondromalacia of the knee, possible internal derangement of the knee and right elbow trauma with damage of previous hardware and superimposed arthritis changes on the X-ray. Dr. Sicherman opined that, "[i]t can be anticipated that [Plaintiff] will continue to be disabled for an indefinite time and will have continued problems, limitation of motion and function . . . ."

4.      Thimmaiah Report

The Thimmaiah report included notes of Dr. Thimmaiah, a Social Security consultative psychologist, who evaluated Plaintiff subsequent to his complaints. The notes indicate that Plaintiff suffered from depressive and anxiety disorders, and lower back pain. Plaintiff also complained of intractable pain following his motorcycle accident in October 2000.

5.      Castillo-Velez Report

On April 26, 2001, Dr. Castillo-Velez, a non-examining, non-treating psychologist, reviewed the diagnosis of Dr. Thimmaiah and reported that Plaintiff had eight out of twenty "moderate limitations" in his functioning, including: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; (5) ability to make simple work-related decisions; (6) ability to complete a normal workday and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) ability to respond appropriately to changes in the work setting; and (8) ability to set realistic goals or make plans independently of others. Dr. Castillo-Velez noted that Plaintiff's depression and anxiety disorders fell under Listings 12.04 and 12.06.

6.      Trachtenberg Report

Dr. Trachtenberg, a non-treating, non-examining physician, completed a Physical Residual Functional Questionnaire for Plaintiff on April 26, 2001. Dr. Trachtenberg concluded

that Plaintiff could return to a full range of light work secondary to sciatica pain, positive straight leg raising, and MRI evidence of fibrosis and lumbosacral disc.

### 7. Obrotka Report

Dr. Obrotka, another Social Security consultative doctor, examined Plaintiff on May 15, 2001. Dr. Obrotka diagnosed Plaintiff with traumatic mydriasis and cataract, concluding that the conditions were consistent with a previous eye injury.

### 8. Spitz Report

Dr. Spitz reviewed Dr. Obrotka's report and concluded that Plaintiff's visual impairments limited his visual depth perception, accommodation to light, and field of vision. Dr. Spitz determined that Plaintiff needed to avoid all exposure to hazardous machinery and heights due to poor depth perception and photophobia.

### ii. Testimony

Testimony was taken at the hearing by a VE, Plaintiff, and a friend of the Plaintiff. The VE was asked hypothetically whether any jobs exist for an individual without full right elbow flexion, with no frequent right hand grasp, and with the need for low contact with the public or co-workers. The VE responded that such an individual could work as a surveillance-system monitor, the code for an unskilled, sedentary job existing in the national and local economy.

Plaintiff testified at the hearing as to the subjective nature of his alleged impairments. Plaintiff began by describing foot pain that had occurred as a result of a dirt bike accident in 1974. Plaintiff next alleged that he suffered from post-traumatic stress and anxiety disorder due to a car accident in 1975. Plaintiff injured his left foot in another dirt bike accident in 1984.

Plaintiff also described numerous hand and eye injuries.  Plaintiff injured his back in a motorcycle accident in 2000.  Plaintiff also suffers from pain in his elbow, arm, hand, pinky finger, wrist, jaw, and right eye, and has problems with depression and concentration.

Nonetheless, Plaintiff testified that he is able to wash the floors and windows in his home, prepare his own food, transact business at the grocery store, drive, visit his sister, and travel alone.  Plaintiff tends to his pet snakes, including regularly cleaning their cages.  Plaintiff also testified that he makes his own cigarettes, smoking approximately twenty times daily.  Plaintiff testified that everything he once did with his right hand, he now does with his left, including dressing and lifting a gallon of milk.  Finally, Plaintiff testified that he has no problem getting along with others.

Charles Lopez testified as Plaintiff's friend.  Lopez testified that Plaintiff is forgetful and at times unable to hold a conversation.  Lopez characterized Plaintiff as "slow" and "clumsy," and concluded that Plaintiff must be depressed because "he never smiles."

**II.   STANDARD OF REVIEW**

  A.   *Scope of Review*

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  See 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Rather, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  Some types of evidence, however, will not be "substantial."  For example,

7

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently

> explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.

      B.     *Statutory Standard for Eligibility for SSI and DIB Benefits*

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." See 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work, but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work

9

which exists in the national economy." See 42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish that: (1) they have not engaged in "substantial gainful activity" since the onset of the alleged disability; and (2) they suffer from a "severe impairment" or "combination of impairments." See 20 C.F.R. § 404.1520(a)-(c). Failure to make this showing results in an automatic denial of benefits, and the court's inquiry necessarily ends there. Bowen v. Yuckert, 482 U.S. 137, 146–47 n.5 (1987).

Upon satisfying this initial burden, claimant must provide evidence that their impairment is equal to or exceeds one of the impairments listed in Appendix 1 ("Listing of Impairments"). See 20 C.F.R. § 404.1520(d). Upon such a showing, claimant is presumed to be disabled and is automatically entitled to disability benefits. Id. If claimant cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits a resumption of claimant's previous employment. See 20 C.F.R. § 404.1520(e). If the claimant is found capable of returning to their previous line of work, then claimant is not "disabled" and is not entitled to disability benefits. Id. Should the claimant be unable to return to their previous work, however, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that claimant can perform other substantial, gainful work. See 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

  C. *The Record Must Contain Objective Medical Evidence*

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." See 20 C.F.R. § 404.1529(b); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

11

**III.     DISCUSSION**

Plaintiff argues that the Commissioner's decision finding no disability should be reversed because the Commissioner failed to properly analyze Plaintiff's severe impairments at Step Two, failed to conduct a proper analysis at Step Three, erred in applying Steps Four and Five, and denied Plaintiff a fair hearing allowing for a proper credibility determination.  Because the Court finds that the Commissioner adequately evaluated Plaintiff's claims at Steps Two through Five, however, and because the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence, the Commissioner's decision is affirmed.

   A.     *The Step Two Analysis Claim*

Plaintiff argues that the ALJ failed to sufficiently discuss, evaluate, and weigh an additional ten documented "severe" impairments during his Step Two analysis.  The ALJ is required to weigh the credibility of all medical and non-medical evidence.  Yensick v. Barnhart, 245 Fed. App'x 176, 181 (3d Cir. 2007).  At Step Two, the ALJ must determine whether the objective medical evidence demonstrates that the ailments are sufficiently severe so as to significantly limit the claimant's physical or mental ability to perform basic work activities.  See 20 C.F.R. § 404.1521(a).  Where the relevant medical evidence establishes only a "slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered," the impairments are "not severe" and the claim should be denied.  See S.S.R. 85-28, 1985 SSR LEXIS 19.

Here, the Court finds that the ALJ properly reviewed the objective medical evidence on record in finding that Plaintiff had only four "severe" impairments—lumbar and right elbow

12

impairments, anxiety disorder, and social phobia.  Plaintiff argues that the ALJ failed to recognize additional "severe" impairments of the eye, right hand, right knee, cervical spine, encephalopathy, headaches, and depressive disorder.  A review of the record, however, shows that Plaintiff can frequently lift and carry ten pounds, can occasionally lift and carry twenty pounds, can stand and/or walk for six hours at a time, and that he has no visual or communicative limitations that would interfere with his ability to perform basis work activities.  Furthermore, Plaintiff testified that he routinely drives, washes the floors and windows, prepares his own food, transacts business at the grocery store, travels alone, takes care of his pet snakes, and makes and smokes his own cigarettes.

    The ALJ's determination that Plaintiff had  no "severe" eye impairments, for example, was based on findings in the Obrotka and Spitz Reports that Plaintiff's visual acuity was essentially within normal limits and that any further problems could be corrected with tinted glasses.  Apart from his own subjective complaints, Plaintiff proffered no objective medical evidence establishing that his eye impairments significantly limited his ability to perform basic work activities.

    Nor were Plaintiff's other alleged severe impairments—specifically his right knee, right hand, encephalopathy, headaches, head trauma, and depressive disorder—supported by the record.  With respect to Plaintiff's right knee, for example, the record contains no reports of any diagnostic testing confirming these impairments or abnormalities.  In fact, an X-ray of Plaintiff's right knee was normal, and with the exception of Plaintiff's subjective complaints and the

Sicherman Report's conclusion that Plaintiff "will continue to be disabled for an indefinite time and will have continued problems [and] limitations of motions and functions," no other evidence was provided of joint deformity, inflammation, instability, or effusion.

Nor does the objective medical evidence support a finding that Plaintiff's right hand impairment, cervical spine impairment or encephalopathy were so severe that they would interfere with Plaintiff's ability to perform basic work activities. The record also lacks objective medical evidence establishing that Plaintiff suffered from severe headaches. Indeed, Plaintiff testified that he experienced headaches only two times over a three-week period. Similarly, with respect to Plaintiff's head trauma, the record lacks objective medical evidence to establish the threshold level of severity.

Finally, although the Thimmaiah Report indicates a diagnosis that Plaintiff suffered from depressive disorder, no resulting functional limitations caused by the disorder were found. It is not enough for Plaintiff to establish through objective medical evidence that he suffered from such a disorder; rather, Plaintiff must show significant limitations in his ability to perform physical or mental work-related activities as a result of his alleged disorder or impairment for such to constitute a severe impairment. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. Here, the record establishes that Plaintiff was capable of relating to people and making social adjustments. Accordingly, the ALJ's conclusion that Plaintiff's depressive disorder was not severe is supported by substantial evidence.

      B.     *The Step Three Analysis Claim*

Plaintiff next argues that the ALJ improperly analyzed his ailments under Step Three. The ALJ is required at Step Three to analyze whether the claimant's "severe" impairments are equal to or exceed one of the impairments listed in Listing of Impairments. See 20 C.F.R. § 404.1520(d). Here, the ALJ reviewed the medical evidence and concluded that none of Plaintiff's four "severe" impairments met, or were medically equivalent to, any of the impairments in the Listing, specifically Listings 12.04 and 12.06. Because the ALJ's determination is supported by substantial evidence, the Court will affirm her decision.

Plaintiff first argues that the ALJ was required to find that his anxiety impairment met the Listing at 12.06 because Dr. Papowitz had made such a finding, and that, by making a contrary finding, the ALJ failed to give adequate weight to the opinion of his treating physician. The Court disagrees. The ALJ is tasked with weighing the credibility of all medical and non-medical evidence. Yensick, 245 Fed. App'x at 181. The opinions of treating physicians are entitled to "substantial and at times even controlling weight" because of the "detailed picture" and "unique perspective" that they can provide. Id. (citing 20 C.F.R. § 404.1527(d)(2)). Such opinions, however, are controlling only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [when] not inconsistent with other substantial evidence" in the record. Fargnoli, 247 F.3d at 43. Where the record contains contradictory medical evidence, including an opinion by a non-treating, non-examining physician, the ALJ may accept the most credible opinion. Yensick, 245 Fed. App'x at 181.

Here, the Court finds that the ALJ properly considered and rejected Dr. Papowitz's decision. The ALJ apparently accorded Dr. Papowitz's opinion only minimal weight because Dr. Papowitz examined Plaintiff for medication management only twice annually, and because his diagnosis was based solely upon Plaintiff's subjective complaints. Dr. Papowitz's opinion was contradicted by the opinion of Dr. Thimmaiah, who concluded that Plaintiff was generally able to relate to people and to make social adjustments despite his depression and anxiety disorders. While the Court recognizes that the opinions of treating physicians are due substantial weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence," the Court nonetheless finds that, in this case, the ALJ gave proper weight to Dr. Papowitz's opinion, and that she adequately explained her reasons for rejecting it. See Fargnoli, 247 F.3d at 43. Furthermore, given the well-delineated "contradictory medical evidence" identified by the ALJ in her opinion, the Court finds that the ALJ was entitled to accept the most credible medical opinion, even if provided by Dr. Thimmaiah, a non-treating physician. See Yensick, 245 Fed. App'x at 181.

Plaintiff also argues that the ALJ's Step Three analysis was insufficient because it failed to itemize all the conditions that were diagnosed related to his lumbar spine and elbow impairments. Plaintiff further contends that the ALJ erred in finding that Plaintiff's social phobia did not meet qualify him for disability under the Listings. The ALJ reviewed the objective medical evidence with respect to these impairments, however, and nonetheless concluded that Plaintiff's impairments did not meet or medically equal any of those included in the Listing. Finally, Plaintiff's argument that the ALJ failed to recognize that his depression impairment met

16

Listing 12.04 is moot because the Court has already upheld the ALJ's finding at Step Two that Plaintiff's depression impairment was not "severe" as supported by substantial evidence. See Bowen, 482 U.S. at 147.

    C.    *The Step Four Analysis Claim*

Plaintiff next argues that the ALJ improperly evaluated his residual functional capacity by: (1) failing to consider his non-exertional limits; (2) limiting the analysis to his limitations, and not his actual impairments; (3) failing to consider the findings of Plaintiff's treating physician; (4) failing to concur with Dr. Sicherman's findings; (5) failing to consider the totality of his impairments; (6) failing to consider his subjective complaints; and (7) misapplying SSR 96-9 to Plaintiff's case.

Plaintiff's contentions that the ALJ failed to consider his non-exertional limitations and that the ALJ's analysis was improperly limited are simply incorrect. The record reflects that the ALJ and the VE took into account Plaintiff's non-exertional limitations at Steps Four and Five, including all but Plaintiff's alleged chronic pain syndrome and mood disorder. The Court also finds that the ALJ properly considered the findings of Dr. Papowitz and Dr. Sicherman. The opinions of treating physicians are entitled to controlling weight only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [when] not inconsistent with other substantial evidence" in the record. See Fargnoli, 247 F.3d at 43. Where the record contains contradictory medical evidence, however, including an opinion by a non-treating, non-examining physician, the ALJ may accept the most credible opinion. See Yensick, 245 Fed.

App'x at 181. Here, the ALJ properly discounted Dr. Papowitz's report because it was not based upon a recent examination of Plaintiff and because it was contradicted by other objective medical evidence in the record. The ALJ was also correct to discount Dr. Sicherman's assessment that Plaintiff was totally disabled because the determination as to whether a plaintiff is able to work is a question reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e).

Finally, Plaintiff's remaining arguments that the ALJ failed to consider the totality of Plaintiff's impairments, failed to consider Plaintiff's subjective complaints, and that the ALJ misapplied SSR 96-9 are also incorrect. The record clearly demonstrates that the ALJ considered Plaintiff's impairments, including his symptoms and subjective complaints, throughout the entirety of the five-step analysis. Nor did the ALJ misinterpret SSR 96-9p. While Plaintiff argues that he cannot perform the job of a surveillance systems monitor because SSR 96-9p defines such jobs as requiring "an ability to stoop occasionally," he fails to recognize that SSR 96-9p also provides that a restriction to occasional stooping "only minimally erodes the unskilled occupational base of sedentary work." See S.S.R. 96-9p. Thus, Plaintiff is not excluded from all sedentary work due to his limited ability to stoop. Accordingly, the Court finds that the ALJ's determination at Step Four is supported by substantial evidence.

   D. *The Credibility Claim*

Plaintiff next argues that he was denied a fair hearing allowing for a proper credibility determination because the Commissioner failed to consider his past testimony. The Third Circuit has held that a claimant's subjective complaints "may, standing alone, establish a finding of total

disability." See Carter v. Railroad Ret. Bd., 834 F.2d 62, 65 (3d Cir. 1987). As such, the Commissioner is required to give proper consideration to a claimant's subjective complaints even when "not fully corroborated by objective medical evidence." Id.

Here, Plaintiff's subjective complaints were made known to the ALJ through the medical reports of his treating and examining physicians and through Plaintiff's testimony. The ALJ weighed both the objective medical evidence and Plaintiff's subjective complaints in determining that Plaintiff could perform gainful activity. The ALJ found that Plaintiff's description of his daily activities, including, for example, driving, shopping for groceries, cleaning his house, taking care of pets, and traveling alone, were consistent with the ability to perform sedentary work. Furthermore, while the medical evidence indicated that Plaintiff suffers from four "severe" impairments, the ALJ nonetheless found that none of these ailments would render Plaintiff unable to work. In so finding, the ALJ properly compared the objective medical evidence with Plaintiff's subjective complaints. See 20 C.F.R. § 404.1529. Accordingly, because the Commissioner properly considered Plaintiff's subjective complaints, the Court finds that Plaintiff was not denied a fair hearing.

E.    *The Step Five Analysis Claim*

Finally, Plaintiff argues that the ALJ improperly evaluated the VE's testimony and his vocational factors in finding at Step Five that Plaintiff could perform the job of a surveillance system monitor. The Court disagrees. A VE's answers to hypothetical questions presented for the purpose of assessing a claimant's claims may be considered only to the extent that they accurately portray Plaintiff's physical and mental impairments. Podedworny v. Harris, 745 F.2d

19

210, 218 (3d Cir. 1984). Plaintiff argues that the ALJ failed to consider certain physical and mental limitations testified to by the VE that would prevent Plaintiff from performing the job of surveillance system monitor. These limitations, however, including the alleged inability to interact with others or to press a button on a television monitor, were not reflected in the record. Accordingly, Plaintiff's claim that the ALJ ignored VE testimony showing that Plaintiff could not perform the job of surveillance system monitor is without merit.

Plaintiff also contests the VE's job description for a surveillance system monitor. The VE testified that the job of surveillance system monitor is unskilled in nature, involves no public contact, and requires only minimal interaction with supervisors. The VE further testified that such a job exists in numbers that range from 1,275 in the regional economy to 16,000 in the national economy. This description comports with the DOT's description of the job. Alternatively, however, even if discrepancies were found to exist, the Court nonetheless notes that the DOT does not provide every requirement for jobs, and the VE may be called upon to provide more specific information about jobs or occupations than the DOT. See S.S.R 004p.

## IV. CONCLUSION

For the reasons stated, the Court finds that the decision of the ALJ should be **affirmed**. An appropriate Order accompanies this Opinion.

                                                         S/ Dennis M. Cavanaugh
                                                        Dennis M. Cavanaugh, U.S.D.J.

Date:        June  8 , 2009
Orig.:        Clerk
cc:          All Counsel of Record
               File